1            UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF OHIO
2                   EASTERN DIVISION

3    UNITED STATES OF AMERICA,        Case No. 1:20cr4
                                      Akron, Ohio
4               Plaintiff,            February 27, 2020

5         vs.

6    RAFAEL MOORE,

7               Defendant.

8
                    TRANSCRIPT OF PROCEEDINGS
9          BEFORE THE HONORABLE JOHN R. ADAMS
               UNITED STATES DISTRICT JUDGE
10

11                     PRETRIAL
                     (ROUGH DRAFT)
12

13   APPEARANCES:

14   For the Government:      Robert J. Kolansky
                              Office of the U.S. Attorney
15                            Suite 400
                              801 Superior Avneue, W
16                            Cleveland, Ohio  44113
                              216-622-3780
17

18   For the Defendant:      Carlos Warner
                              Office of the Federal Public
19                            Defender - Akron
                              Northern District of Ohio
20                            700 Akron Centre Plaza
                              50 South Main Street
21                            Akron, Ohio  44308
                              (330) 375-5739
22

23

24
                                      DEFENDANT'S
                                        EXHIBIT
25
                                   A   1:20CR00004

          Lori A. Callahan, RMR-CRR    (330) 252-6022
                 DEFENDANT'S EXHIBIT A-1

1

2

3    Court Reporter:            Lori Ann Callahan, RMR-CRR
                                United States District Courthouse
4                               Room 568
                                2 South Main Street
5                               Akron, Ohio  44308
                                (330) 819-8676
6

7

8

9

10   Proceedings recorded by mechanical stenography, transcript
     produced by computer-aided transcription.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DEFENDANT'S EXHIBIT A-2

P R O C E E D I N G S

-   -   -

1          THE COURT:  For the record, the court has before

it today Case Number 1:20cr04.  The case is United States of

America versus Rafael Moore.  We're here for a final

pretrial.  Our trial is scheduled currently for March 9 at

9:00 a.m.

        Counsel for the government, are you ready to

proceed?

        MR. KOLANSKY:  Yes, Your Honor.  Robert Kolansky

on behalf of the United States.

        THE COURT:  Thank you.  On behalf of the

defendant?

        MR. WARNER:  Carlos Warner, Assistant federal

Defender, here for Mr. Moore.

        THE COURT:  Thank you.

        Counsel for the government, would you provide the

court with an update, a status of the matter, please?

        MR. KOLANSKY:  Your Honor, at this point, the

government has turned over discovery albeit, quite frankly,

a little later than we had hoped for.  Detective Donald

Copcheck who's a Cleveland police detective and a FTO with

the ATF, he was out with a work-related injury for

approximately two weeks during January, so it took some time

for me to actually get my hands on that discovery to be able

Lori A. Callahan, RMR-CRR    (330) 252-6022

DEFENDANT'S EXHIBIT A-3

1    to turn it over.  It has been turned over a little more than

2    a week ago.  Butt I also understand that Mr. Warner is in

3    the process of preparing for a trial, as well, which

4    basically puts us in the same place that I think Mr. Warner

5    and I are going to be asking for a little more time that he

6    can effectively review the material with his client and

7    prepare for.

8              THE COURT:  What is the extent of the material?

9              MR. KOLANSKY:  It's voluminous in the form of

10   videos, Your Honor.  Quite frankly, it's a search warrant

11   executed in the defendant's house where various drugs and

12   guns were found.  The paper documents are I think about 20

13   pages in total, but there are a number of hours of body

14   camera footage from various.

15             THE COURT:  You say number of hours.  How long?

16   How many hours?

17             MR. KOLANSKY:  I believe they were at the -- this

18   is an estimate without perfectly for you.  I think they were

19   there for two or three hours.  There are probably four

20   different detectives.  So theoretically, that's if three

21   hours times four, it's 12 hours of footage.  We have

22   discussed that there are a couple of portions that I've

23   reviewed that I think are essentially more important than

24   others where the defendant was Mirandized and gave a

25   statement.

1    I am certainly going to specifically point out

2    specifically where what that is to so try to streamline the

3    process.

4         THE COURT:  So 12 hours of video and 20 documents.

5         MR. KOLANSKY:  20 pages of documents, Your Honor.

6         THE COURT:  20 pages.

7         MR. KOLANSKY:  Yes.  I provided three documents to

8    defense counsel, 21 pages.

9         THE COURT:  How long ago did you do that?

10        MR. KOLANSKY:  That was more than a week ago.

11   That was on the 19th.

12        THE COURT:  On the 19th?

13        MR. KOLANSKY:  Yes, sir.

14        THE COURT:  All right.  Counsel for the defendant.

15        MR. WARNER:  Thank you, Your Honor.  May it please

16   the court.

17        I want to accept a little bit of responsibility as

18   Mr. Kolansky said, as well, because I have a life sentence

19   trial starting with Judge Polster on Monday that does not

20   look like it's going to be avoided.  So I have been in doing

21   all I can just to prep everything for that really for the

22   past few weeks myself.

23        THE COURT:  Which trial was scheduled first, this

24   one or that one?

25        MR. WARNER:  That one was scheduled first, but I

1    was brought into that case by the court and my office

2    specifically.

3            THE COURT:  So you are newly appointed counsel in

4    that case?

5            MR. WARNER:  No, no.  Mr. Thompson is the lead

6    counsel, but I was brought in because it's a life case and I

7    have a prior relationship with the client.  And Judge

8    Polster is well aware and was advocating for it to verify

9    exactly how hard -- I've been, in fact, Mr. Moore, I

10   apologize to him when we spoke yesterday, because I've been

11   in CCA like almost every day and my clients all know it, but

12   I've been working with the client.  I've been in triage mode

13   if we're talking about Mash, or some sort of hospital.

14          THE COURT:  The other client has another attorney

15   besides you?  Mr. Thompson, right?

16          MR. WARNER:  Yes.  It's a very complicated case,

17   and, yes, he does have another attorney.

18          THE COURT:  Mr. Moore has only you.

19          MR. WARNER:  That's for sure.

20          THE COURT:  Okay.

21          MR. WARNER:  For now.  So this case is a case

22   that's important to Mr. Moore.  He's facing -- what's the

23   statutory maximum in the guidelines in this case?

24          MR. KOLANSKY:  Your Honor, the defendant is

25   looking at a 40-year maximum on Counts 1, 2 and 3, a

1    ten-year maximum on Count 4, and I guess I believe it's life

2    maximum of Count Number 5.

3              The guidelines, Your Honor, for counts -- well,

4    for Counts 1, 2 and 3 are five-year mandatory minimum.  For

5    Count 5, there's a five-year consecutive for the 924(c).

6              As far as the actual guidelines go, Your Honor, I

7    believe it's a --

8              MR. WARNER:  Unless the court wants to know.

9              THE COURT:  Don't interrupt him.  He's talking.  I

10   asked him a question.  Just stand there quietly.

11             MR. WARNER:  Okay.  Thank you, Your Honor.

12             THE COURT:  Please.  Don't try to talk over him or

13   banter back and forth while he's answering my questions.

14   Have a seat.

15             MR. KOLANSKY:  Your Honor, I believe that as far

16   as the guidelines go, based on my review, I have the

17   defendant as a level 26 for the drug offenses in Counts 1

18   through 3.  If he were to accept responsibility and also be

19   convicted of Count Number 5, it would be -- well, taking a

20   step back.  Criminal History Category III with four points

21   for the 26 on the drug counts, 1 through 3, I have then,

22   with three levels of acceptance of responsibility, is 57 to

23   71 months.  Again, Count 5 carries a 60-month consecutive

24   sentence, therefore, it would be 117 to -- my math is bad --

25   131.

1      THE COURT:  All right.  You conveyed this by way

2  of a proposed plea agreement to counsel?

3      MR. KOLANSKY:  I have, Your Honor.  I sent a

4  proposed plea agreement earlier this week to Mr. Warner.  On

5  the 25th, on Tuesday, Your Honor.

6      THE COURT:  Mr. Warner, now, what do you want to

7  add for the record.

8      MR. WARNER:  Judge, I need -- first of all, the

9  paper discovery will be going -- Mr. Moore will receive

10  today.  Before the paper discovery goes to my client, I

11  always review it to make sure that there's no material that

12  I don't think is appropriate for him to have or her to have,

13  so but he's getting that today.

14      And then the videos I can bring them.  I'm going

15  to be back at CCA probably over the weekend.  I could bring

16  him the videos this weekend.  When I -- I will likely be in

17  trial it looks liken eight to ten days.

18      THE COURT:  Counsel, let me ask you this.  You

19  chose to become cocounsel in another case.

20      Did you not know and recognize that you had a

21  trial date scheduled in this case.

22      March 9, right?

23      MR. WARNER:  Yes.

24      THE COURT:  So the question becomes when you

25  decide that you're going to add yourself as cocounsel to

1    another case, rather than someone else in your office, who

2    may not have a conflict, by way of example, if this case

3    goes forward to trial as it's been previously scheduled on

4    March 9, you're going to be here.

5            You're not going to go to another judge or another

6    case and switch off to become cocounsel in another case and

7    say, "Oh, by the way, now, because I chose to become

8    cocounsel in another case, you're going to have to, Judge

9    Adams, continue your case, and my client's going to sit in

10   custody waiting, because I chose," because you took a

11   voluntary decision to add yourself into another case.  It

12   doesn't work that way.

13           If I have to reach out to Judge Polster, I will

14   tell him.  It's not appropriate for you to go on and become

15   cocounsel and then say, "Well, I'm not going have to deal

16   with Judge Adams' case, you know, I've got a conflict."

17   Well, no, you don't.  You don't have a conflict at all.  The

18   only conflict you the one you created for yourself?

19           MR. WARNER:  May I respond.

20           THE COURT:  You sought no continuance in this

21   case.  I don't have a motion from you.  So none of that is

22   made part of the record.

23           So go ahead.  Add what you want for the record.

24           MR. WARNER:  Thank you, Your Honor.

25           First of all, whether or not it's voluntary or

1   not, I was, again, asked/assigned back to that case.  It's a

2   life case, and two attorneys in our office do those cases.

3          As for -- it's not only Mr. Moore and it's not

4   just Judge Adams.  It's many other judges, too.  It's

5   because I have to -- excuse me.  I have to triage my cases.

6   So the case that goes to trial, on Monday, if it was your

7   case, everything else would go on hold, Your Honor, and I

8   encourage you to call Judge Polster, if need be.  He has

9   witnessed what I've been doing and working on that case.

10          Now, so far as Mr. Moore, we've had some meetings.

11   I've been I think very honest with him.  I've told him, and

12   I am telling my other clients exactly what's happening.  I

13   am trying to meet with some of them in the midst, not to

14   mention the clients we have on the outside.  I am in CCA a

15   lot and I am confident that we are going to have a great

16   relationship when push comes to shove.  It's not it.  It's

17   just that I didn't have any documentation until a few days

18   ago.

19          THE COURT:  What do you mean a few days ago?  The

20   19th of February.

21          MR. WARNER:  I mean, I don't think it's anything

22   -- it's Mr. Kolansky's fault.  We didn't receive the videos

23   until the 24th.

24          MR. KOLANSKY:  The 21st.

25          MR. WARNER:  I think that day it actually got to

1    my office on the -- because you pick them up Friday and

2    there's a weekend.  So I didn't even have access to the

3    videos on this case until it would be Monday this week.  So

4    I haven't been able to review all those videos, and I could

5    turn them over blindly to him if the court thinks it's all

6    right.

7            Normally, again, either I or somebody is going to

8    look at those videos before we turn them over just in case

9    there's --

10           THE COURT:  Why?  Because their body cam videos in

11   their entirety of the search.

12           So why is it you have to look at them before the

13   defendant?  Because it's the defendant's case.  He has a

14   right to look at the videos.  Are you going to then view

15   them and say, "Oh, by the way, Mr. Moore, I am only going to

16   give you part of the videos.  I'm not going to give them all

17   to you."  Is there some valid reasons why you would do that?

18           And what would Mr. Moore say?  He might say, "Wait

19   a minute.  By the by, I want to see all the videos."

20           MR. WARNER:  He might say that.  Every now and

21   then, I will have documents like this and they will have

22   informant information, personal information, stuff that has

23   to be redacted just because everybody is busy and that comes

24   through, and I don't want that going to the client.

25           So I make sure to review it all.  Same with the

1    videos.  On the videos, I don't know what he's saying.  He

2    could be talking about cooperating for example, I don't know

3    that he is.  He could be talking about any number of things

4    that if those are viewed at CCA would cause him in trouble,

5    and so I would like to look at those.

6              Now, is it realistic I'm going to look at I think

7    12 hours of videos before we get it to him given that I have

8    a trial?  I might have somebody else look at them, or if the

9    court is fine with it, I'm going to send it to him and

10   that's fine.

11             THE COURT:  A couple things.

12             First of all, the March 9 trial date was set by

13   agreement of counsel.  I always schedule dates, ask counsel,

14   is March 9 convenient for the parties.  I don't set these

15   dates unilaterally.  So the date was set in conjunction with

16   counsel, making sure that both parties were available.  So

17   there's no dispute that both sides were available.  That's

18   why this date was set.

19             Secondly, rules of superintendents, I recognize

20   we're in federal court, but the state court, rules of

21   superintendents are very simple.  The first scheduled trial

22   date, first case scheduled goes first.  So the fact that you

23   chose to add yourself to another case without seeking

24   continuance here or without -- I don't know whether you

25   notified Judge Polster or not, "Judge, I have a previously

1    scheduled trial date before Judge Adams.  I have an

2    obligation to Mr. Moore, and I need to be there."

3            So you make a voluntary choice to try to create a

4    conflict, you created it.  As far as I am concerned, the

5    trial date is confirmed.  We will go on March 9.

6            So if you want another date for me to schedule a

7    final cutoff date for a plea, I will give you that courtesy,

8    but otherwise, given the press of business, we have a trial

9    date, and we're going to hold that trial date.  It's that

10   simple.

11           MR. WARNER:  I understand, Your Honor.  For the

12   record, let me just say that I would be -- irrespective of

13   my other commitments, which I am mentioning to the court

14   only because I don't think that the prosecutor should be

15   taking all of the heat for this when I get the discovery

16   this week, and we have a trial scheduled next week,

17   that's -- there's 12 hours of video, that's not an

18   appropriate amount of time for us to cover the evidence and

19   determine whether or not there are issues that need to be

20   litigated or if this is a plea.

21           So I would be asking for a continuance

22   irrespective of my other obligations.

23           THE COURT:  I'm not going to continue this case,

24   Counsel, for any great lengthy period of time.  So don't

25   think that you're going to go into Judge Polster's room.

1    You never sought a continuance there, did you?

2              MR. WARNER:  With Judge Polster?

3              THE COURT:  Yes.

4              MR. WARNER:  That case has been pending three

5    years, Your Honor.

6              THE COURT:  Did you ask for a -- that wasn't my

7    question.  Did you ask for a continuance and say, "Judge

8    Polster, I've just recently joined this case.  I have a

9    conflict.  I have a case that was scheduled with Judge Adams

10   back on from March 9.  So therefore, accordingly, I really

11   can't go forward in this case, or at least if I am going to

12   participate in this case, Judge Polster, I will need a

13   continuance because I have a commitment to Mr. Moore.  And I

14   have a trial date before Judge Adams."

15             Mr. Moore, how many times have you seen Mr. Warner

16   on your case?

17             You care to tell me or not?  You are shaking your

18   head.

19             How many times?

20             THE DEFENDANT:  Once or twice.

21             MR. WARNER:  I think two or three times I've seen

22   him, Your Honor, which is -- you know, that's not --

23             THE COURT:  We can find that out, of course.

24             MR. WARNER:  No, I mean --

25             THE COURT:  When was this case arraigned?

1      MR. WARNER:  I mean, Your Honor, feel free to call

2  Judge Polster, CCA.  I mean, I have zero to hide.  It's not

3  necessarily a voluntary situation, but if this court orders

4  me to be here on March 9 for trial, certainly, I will, you

5  know, put things on the record, but I will be here on March

6  9 for a trial.

7      Every now and then, these conflicts happen, but I

8  am not in control over this conflict and, Judge, it's not

9  only a conflict with you.  Judge Gwin -- I have a trial

10  scheduled with him.

11      THE COURT:  No, no, Counsel.  It is within your

12  control.  This is a conflict that you've created.  You've

13  created it by saying, "I am going to be add myself to

14  another case knowing full well you have a trial currently

15  scheduled here."

16      So when you make the conflict, that's why, as I've

17  pointed out to you, if you go back and look at the Ohio

18  Rules of superintendents, it's very clear to avoid these

19  issues, first scheduled goes.  And you can't go back and

20  create a conflict by simply adding yourself to another case

21  and then come to the other judge and say, "Oh, by the way,

22  Judge, the trial date that you scheduled, I can't really

23  make it because now I want to be an attorney in another

24  case.  I'm going to add myself to another case," another

25  case as you've indicated has been pending now for three

1    years.

2            And so you don't seek a continuance in front of

3    Judge Polster.  You don't seek a continuance here, because

4    today is the final pretrial, by which pursuant to my order

5    is the last day I will accept a plea.  So now who creates

6    the conflict here?  And by the way, as I've already stated,

7    when I scheduled the March 9 date, as I always do, and I can

8    go back and read the record, and say, "Counsel for the

9    government, is March 9 a convenient date for trial?  Yes,

10   Your Honor.  Mr. Warner, is March 9 a convenient date for a

11   trial?  Yes, Your Honor."

12           So you create the conflict.  So your office should

13   say, "Wait a minute.  Before we're going to let you join

14   Judge Polster's case, by the way, Mr. Warner, do you have

15   any conflicts with any other judges or any other cases or

16   any other defendants?  And if you do, how are you going to

17   deal with those?  Are you going to file a motion for a

18   continuance?  What are you going to do?"

19           You've done nothing.  You've come here and said,

20   "Oh, by the way.  Fait accompli, Judge.  You can't go

21   forward on March 9 because I am now going to be in a case

22   with Judge Polster."

23           MR. WARNER:  I am not trying to argue with you.

24   We can't be in trial on March the 9 because I didn't get

25   discovery in this case until Monday, and I haven't reviewed

1   it.  And that's not Mr. Kolansky's fault.  It's the fact

2   that I don't know when our initial appearance was.  I think

3   it was early in January, I would say, and it was a long

4   period before we received any discovery.  So we received the

5   paper discovery I think on the 19th or the 20th, and then we

6   received these videos on the 24.

7          So that's the basis for the continuance.  I am

8   also letting the court know what my personal obligations

9   are.

10          THE COURT:  Your personal obligation is to this

11   defendant in this court and in this trial.  That's where

12   your obligation lies right now.

13          MR. WARNER:  And I have never sold one client

14   short and Mr. Moore will not sold short at all.  That's why

15   I am being completely candid with both you and Mr. Moore.

16          THE COURT:  Did I miss something?

17          Did you not tell me that you were spending all of

18   your time preparing for this case that might involved a life

19   sentence?

20          MR. WARNER:  It does involve a life sentence, Your

21   Honor, and yes, we've been preparing none stop.  I've been

22   getting home at 8:00, 9:00, 10:00.

23          THE COURT:  Maybe you should go back to your

24   office and say, "You know, it's really unfortunate, but I

25   have other clients and I have other cases that are scheduled

1    for trial.  And so rather than add me to this case at a

2    later -- at a late time, I shouldn't be doing that to the

3    detriment of my other clients."

4         MR. WARNER:  I think that the court's touching on

5    some big issues.

6         THE COURT:  Well, that's between you and your

7    office.

8         MR. WARNER:  I am assigned cases and I tend to

9    them all, and I treat them all with importance that I would

10   treat my own case.

11        THE COURT:  Mr. Moore is facing about ten years in

12   prison, if he's convicted at trial, or maybe longer.

13        So Mr. Moore is facing a long period of time, too?

14        MR. WARNER:  Yes, he is.

15        THE COURT:  So here's what we're going to do.

16   March 9 will be the final cutoff date for a plea in this

17   case.

18        MR. WARNER:  Okay.

19        THE COURT:  So you will be here at 1:00 p.m., On

20   March 9.  That will give you adequate time to go over with

21   the defendant the video and the papers.  He's here today.

22   He will be here until 4:00.

23        MR. WARNER:  I will be here, Your Honor.

24        THE COURT:  If you need equipment for videos, we

25   will give the equipment so you can go over the videos.

1          And the government, you will provide him with the

2     most important parts?

3          MR. KOLANSKY:  I will, Your Honor.

4          THE COURT:  Do that.

5          And the trial date will be continued until March

6     14, one week, at 9:00 a.m.

7          MR. WARNER:  So March 9 at 1:00.

8          THE COURT:  Final plea trial.  No plea agreement

9     will be accepted after that date.

10         MR. WARNER:  I do have a sentencing at noon on

11    March 9?

12         THE COURT:  Where is that at?

13         MR. WARNER:  I believe that is Judge Gwin.

14         THE COURT:  What time?

15         MR. WARNER:  12:00.

16         THE COURT:  2:30 then here.  That will give you

17    plenty of time to be here, right?

18         MR. WARNER:  2:30.

19         THE COURT:  2:30 you will be here.

20         MR. WARNER:  I am more than happy, if --

21         THE COURT:  The other problem here, I didn't touch

22    on, was speedy trial.  So we will schedule it for trial

23    March 13, the last day we can schedule a trial date, due to

24    speedy trial.

25         MR. WARNER:  I think Mr. Moore would give you a

1  waiver given the charges, but I don't know if the court

2  wants to inquire.

3         THE COURT:  You haven't even talked to him about

4  it.  Why don't you take some time to talk to him about

5  whether or not he wants to waive his rights to a speedy

6  trial.  He may not.

7         MR. WARNER:  Okay.

8         (Pause.)

9         MR. WARNER:  He's indicated to me he doesn't

10  desire a speedy trial.  He's willing to waive his right to a

11  speedy trial.  I've explained to him what the -- how the

12  speedy trial statute worked in federal court, and he's

13  willing to waive that for any period that the court.

14         THE COURT:  Mr. Moore, is that correct?

15         THE DEFENDANT:  Yes.

16         THE COURT:  You need additional time to talk to

17  Mr. Warner to confirm?  You understand your waiver to a

18  rights to a speedy trial?

19         Sir, I'm not convinced you do, based upon your

20  response.

21         I will step off.  You take 10 minutes, 15 minutes,

22  how much time you need to explain it to him in detail.  I am

23  going to go back and look at my calendar.  We're going to

24  try this case.  Speedy trial -- again, we will try this case

25  within the next two weeks, so be prepared.  We will step

1   off.

2                    MR. WARNER:  Thank you, Your Honor.

3              (Thereupon, a recess was had.)

4                    THE COURT:  Please be seated.

5                    All right, Counsel.  What's your client's desire

6       regarding waiver of his speedy trial rights?

7                    MR. WARNER:  Your Honor, I did explain to him in

8       detail how the speedy trial statute works here in federal

9       court.  I think he understands and he's willing to waive up

10      to 60 days if the court pleases at this time.  He's in no

11      rush to go to trial.

12                   THE COURT:  Sorry, Counsel.  He's in no rush, but

13      our trial schedule is extremely busy.  I have cases with 17,

14      18, 19 defendants, so, no, we're not going to continue this

15      matter for any period closer to that time.

16                   As a matter of fact, the trial date will be March

17      13.  That's a Friday.  We can pick a jury on the Friday, and

18      we will begin on the next Monday.

19                   MR. WARNER:  Judge, I was not asking for a

20      continuance.  I was simply saying that he's willing to waive

21      his speedy trial for that period of time.

22                   THE COURT:  He may do that.  If he wishes, he may

23      do that in an abundance of caution.  We'll proceed as I've

24      indicated, first of all, as to speedy trial, and then we

25      will schedule new dates.

1          Mr. Moore, have you had an opportunity to discuss

2     with Mr. Warner waiving your right to a speedy trial?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Has he explained it to you in detail?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Do you need any further explanation?

7          THE DEFENDANT:  No.

8          THE COURT:  You wish to waive your right to a

9     speedy trial and consent to your current trial date of March

10    9 being continued?

11         THE DEFENDANT:  Yes.

12         THE COURT:  Have you executed the written waiver?

13         We will provide it to you at this time.

14         MR. WARNER:  We will just sign as it, Judge, or

15    would you like me to write in the 60 days somewhere, or does

16    it not matter to the court?

17         THE COURT:  It's up to you, Counsel.  The case is

18    going to be tried longer -- far earlier than 60 days.

19    That's for certain.

20         MR. WARNER:  I am just saying in case something

21    happens.

22         I will just say May 1, if it pleases the court.

23    Thank you, Your Honor.

24         THE COURT:  For the record, the court would note

25    that the defendant has executed a written waiver of his

1   rights of speedy trial.  The court will approve the waiver.

2   As grounds for the continuance, the court finds the ends of

3   justice are serves by the granting the motion for a

4   continuance to allow the defendant the additional time to

5   review about 20 pages of documents, along with 12 hours of

6   body cam video that appears to have been provided to the

7   defendant this past week.

8            So that there's adequate time to do that in

9   preparation for trial and/or to engage in any other

10  necessary preparation taking into account the exercise of

11  due diligence.

12           So I will approve it.  As it relates to the

13  continuance, we will convert today's trial date to the

14  current trial date of March 9 to a change of plea date.

15  It's Monday.  My understanding is 2:30 is convenient for

16  both sides.

17           Counsel for the government, is that convene.

18           MR. KOLANSKY:  Yes, Your Honor.  Thank you.

19           THE COURT:  Counsel for the defendant?

20           MR. WARNER:  It is, Your Honor.  Thank you.

21           THE COURT:  Jury selection will be on March 13.

22  That is a Friday.  Then we can proceed to trial on the

23  following Monday if need be.

24           And we will discuss the details of witnesses, et

25  cetera.  Perhaps now you can tell me generally, counsel for

1  the government, how many witnesses you would anticipate?

2         MR. KOLANSKY:  Depending on stipulations, Your

3  Honor, as to the controlled substances, as far as fact

4  witnesses, I would think no more than three.

5         THE COURT:  All right.  And counsel for the

6  defendant, how many witnesses would you anticipate should we

7  go to trial?

8         MR. WARNER:  Judge, I have no idea at this point.

9  I mean, we haven't had a chance to really review the

10  discovery to go through it.  I will be happy to file a

11  notice ex parte or otherwise letting the court and

12  Mr. Kolansky know what we're thinking once we go through the

13  discovery.

14         THE COURT:  We will see on March 9, and just it's

15  clear, there's been a proposed plea agreement drafted,

16  prepared and submitted to the defendant?

17         MR. KOLANSKY:  Yes, Your Honor.

18         THE COURT:  You did receive it, Mr. Warner?

19         MR. WARNER:  I did, Your Honor.

20         THE COURT:  No suggestions here.  Mr. Moore, I am

21  not suggesting you should plead guilty at all.  As a matter

22  of fact, you have a right to a trial, you are presumed

23  innocent.  But if you wish to avail yourself of a plea

24  agreement by the government, Monday, March 9 is the last

25  time I will accept a plea other than a plea to the

DEFENDANT'S EXHIBIT A-24

1    indictment.

2              Is that clear?

3              THE DEFENDANT:  Yes.

4              THE COURT:  Discuss that further with your

5    counsel.

6              Just for the record, Mr. Warner, what is this case

7    that -- in which you filed an appearance which created this

8    conflict?

9              MR. WARNER:  I didn't file an appearance.  I was

10   initially assigned the case.  The name of the case is Shawn

11   Smith, it's with Judge Polster.  The case number is 17CR258.

12             THE COURT:  All right.  I'd just encourage both

13   counsel, just for future reference, while it may not be

14   directly related, it's clearly related to how we proceed in

15   court here.

16             Take a look at the Ohio rules -- superintendents

17   Rule 41, which addresses continuances and conflict of trial

18   dates.  While, again, it is not -- certainly not binding

19   here in federal court, it's certainly relevant to the issues

20   before the court and so, therefore, hopefully the parties

21   will understand how we're going to proceed and how we've

22   always proceeded in this room, and that is first scheduled

23   trial always goes first.  That's the way it's always done in

24   state court, at least by my experience, and as part of the

25   rules.

1           So that's how we will proceed.  We will see you on

2    Monday, the 9th and then we have our trial date.

3           Thank you very much.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25